Filed 7/9/24  P. v. Torres CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B330922 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA220341) |
| v. | |
| BRAULIO TORRES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Garcia, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury convicted defendant Braulio Torres of first degree murder in 2004.  In 2022, he filed a petition for resentencing under Penal Code[1] section 1172.6, which the superior court denied at the prima facie stage.  Torres appeals, contending the court erroneously denied him an evidentiary hearing because it is possible he was convicted based on an imputed malice theory not viable under current law.

We disagree.  The jury either found Torres guilty as the perpetrator of murder or as a direct accomplice under an aiding and abetting theory.  Under either scenario, the jury necessarily found that Torres acted with the intent to kill.  Because Torres is ineligible for relief under section 1172.6 as a matter of law, we affirm the denial of his petition.

## POSTCONVICTION RELIEF UNDER SECTION 1172.6

We begin by briefly summarizing section 1172.6, which was enacted in 2018 as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.).[2]  The legislation's overall purpose was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the

---

[1] All further unspecified statutory references are to the Penal Code.

[2] Section 1172.6 was originally codified as section 1170.95. The Legislature renumbered the statute as section 1172.6, with no change in text, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For ease of reference, we use the current citation throughout.

underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this, the bill added section 188, subdivision (a)(3) "to amend the natural and probable consequences doctrine," and added section 189, subdivision (e) "to amend the felony-murder rule." (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Section 188, subdivision (a)(3) provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e) provides that a person can be held liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Section 1172.6 allows defendants convicted of murder under a theory now precluded by section 188 or 189 to petition to vacate their convictions and be resentenced on any remaining counts. Defendants must initially make a prima facie showing of eligibility for relief by demonstrating they can satisfy three criteria: first, that they were charged by a complaint, information, or indictment "that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)); second,

3

that they "w[ere] convicted of murder . . . or accepted a plea offer in lieu of a trial at which [they] could have been convicted of murder" (*id.*, subd. (a)(2)); and third, that they "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019" (*id.*, subd. (a)(3)).  If the defendant makes a prima facie showing satisfying all three criteria, the resentencing court must issue an order to show cause and hold an evidentiary hearing at which the burden is on the prosecution to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing.  (§ 1172.6, subds. (c), (d).)

## BACKGROUND

### A.  Factual Summary

Remaining cognizant that fact-finding is restricted at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 971), we rely on the factual statement from our prior opinion (as both parties likewise do in their appellate briefs) to provide context to our analysis of the record of conviction.

"[Torres] and Jorge Rosales (Rosales) were members of the 18th Street gang.  Uriel Preciado (Preciado) and Pedro Flores (Flores) were associates of the gang.

"The P Stone Bloods and the Easy Riders were rivals of 18th Street.  Their territory was adjacent to that of the 18th Street gang.

"On July 24, 2001, [Torres] was driving near Crenshaw Boulevard and 28th Street.  Rosales and Preciado were riding in the car.  Three men walked by them and made Easy Rider gang signs.  Rosales made an 18th Street gang sign and then made an obscene hand gesture.  One of the men on the street drew a gun. [Torres] drove away, stating, 'We're going to come back.'

4

"[Torres] drove to his apartment, where he, Rosales and Preciado drank tequila and smoked marijuana. Flores joined them at the apartment.

"[Torres] had a cloth bag containing five guns inside his apartment. He took this bag with him as he, Rosales, Preciado and Flores left his apartment and got into his car. He sat in the driver's seat, Rosales sat in the front passenger seat, Preciado sat in the back behind [Torres] and Flores sat in the back behind Rosales. [Torres] distributed guns to the other three.

"[Torres] drove back to the area where they had encountered the Easy Riders. He drove up and down a number of streets, looking for them. After finding none, Rosales suggested they go home. At Montclair and 28th Streets, [Torres] saw Osama Hadnot (Hadnot) standing on a street corner. Hadnot was not one of the men they had encountered earlier. [Torres] called out to Hadnot, 'What's up . . . .' Hadnot began to run. Shots were fired at him through the open windows on the driver's side of the car.

"Los Angeles Police Officers Neil Spitz and Patrick Oliver were in an unmarked police car across the street, conducting an undercover narcotics investigation. They saw [Torres]'s car approach the area, heard gunshots and saw guns being fired from the front and rear driver's side windows. They began pursuing [Torres]'s car. Flores shot at them through the rear passenger's side window.

"Other officers joined in the pursuit. [Torres] eventually crashed his car into another vehicle. He, Rosales and Preciado fled on foot, while Flores remained in the car. Officers apprehended [Torres], Rosales and Preciado and took them into

5

custody.  The officers also recovered shell casings and the bag containing the five guns inside [Torres]'s car.

"Hadnot died of multiple gunshot wounds. . . .

"**_Defense_**

"On July 24, 2001, [Torres] and Rosales were driving home after taking care of some errands.  At Crenshaw Boulevard and 28th Street, Rosales pointed to three men crossing the street.  The men looked at them and made gang signs.  Rosales made an obscene hand sign.  One of the men reached in his pocket and began running toward [Torres]'s car.  Rosales said the men were shooting at them, so [Torres] drove away.  [Torres] did not hear any gunshots, however, and thought Rosales was hearing things because he was under the influence of marijuana.

"They went to [Torres]'s apartment, where Rosales drank alcohol and smoked marijuana.  Flores joined them.  [Torres] drove Rosales and Flores to Rosales's house and then took them to run an errand.  On the way, they saw Preciado at a gas station; [Torres] offered him a ride.

"Rosales kept talking about the Easy Riders attempting to shoot him.  He asked [Torres] to drive to Crenshaw Boulevard to see if the men were still there.  Rosales said he was going to shoot the men if he saw them.

"[Torres] drove slowly as he approached the corner at 28th Street, where Hadnot was standing.  Hadnot was not one of the men that [Torres] and Rosales had seen earlier.  Rosales said to Hadnot, 'What's up . . . .'  [Torres] saw that Rosales was holding a gun.  Rosales pushed [Torres] out of the way.  [Torres] ducked down and heard nine shots.  He drove away.  As he was driving, he heard more gunshots coming from the back of his car.  Eventually, he lost control of his car and crashed.  He fled on foot

6

but was apprehended and arrested." (*People v. Torres* (Dec. 28, 2005, B178418) [nonpub. opn.].)

**B.    Procedural History**

In a one-count information filed on March 1, 2002, the People charged Torres, Rosales, and Preciado under section 187, subdivision (a) with murdering Hadnot.  As to all three defendants, the information alleged a special circumstance that the murder was perpetrated by means of discharging a firearm from a motor vehicle intentionally at a person outside the vehicle with the intent to inflict death.  (§ 190.2, subd. (a)(21).)  The information also alleged a gang enhancement (§ 186.22, subd. (b)(1)) and personal firearm use enhancements as to all three defendants (§ 12022.53, subds. (b), (c) & (d)).

The case against Torres and Preciado proceeded to a jury trial.[3]  The trial court used CALJIC No. 8.10 to instruct the jury on the elements of murder:  "Defendants are accused in [c]ount 1 of having committed the crime of murder, a violation [of s]ection 187 . . . .  [¶]  Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder.  [¶]  In order to prove this crime, each of the following elements must be proved:  [¶]  1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The killing was done with malice aforethought."

The court defined malice for the jury through CALJIC No. 8.11, which states in relevant part, " 'Malice' may be either

---

[3] Prior to trial, Rosales pleaded guilty pursuant to a plea bargain to voluntary manslaughter, admitted personal firearm use and criminal street gang allegations, and agreed to testify for the prosecution.

express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought." (CALJIC No. 8.11.)

The court instructed the jury that, if it found a defendant guilty of murder, it had to determine whether the murder was of the first or second degree. The court then gave separate instructions on first and second degree murder. The first degree murder instruction (CALJIC No. 8.20) stated in relevant part: "All murder which is perpetrated by any kind of wilfull [*sic*], deliberate and premeditated killing with express malice aforethought is murder of the first degree. [¶] The word 'willful,' as used in this instruction, means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand. [¶] . . . [¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill." The second degree murder instruction (CALJIC No. 8.30) stated, "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the

8

perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation."

The court did not instruct the jury on felony murder or the natural and probable consequences doctrine.

The court did give aiding and abetting instructions. The court gave CALJIC No. 3.00, which explained that "principals" in a crime include perpetrators and accomplices, stating, "Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the intent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." The court then utilized CALJIC No. 3.01 to set out the elements of aiding and abetting liability: "A person aids and abets the [commission] of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime."

The court instructed the jury to determine if the special circumstance allegation was true only if they found a defendant guilty of first degree murder.

On August 4, 2004, the jury convicted Torres of first degree murder (§ 187, subd. (a)), and found true the special circumstance (§ 190.2, subd. (a)(21)) and gang enhancement (§ 186.22, subd. (b)(1)). The jury found not true the personal firearm use enhancement allegation as to Torres. (§ 12022.53, subd. (d).) On September 13, 2004, the trial court sentenced Torres to life imprisonment without the possibility of parole.

9

On December 28, 2005, we affirmed the judgment. (*People v. Torres*, *supra*, B178418.)

## C.    Section 1172.6 Petition

On November 1, 2022, Torres filed his resentencing petition. The court appointed counsel to represent Torres. The People filed an opposition and Torres filed a reply.

On May 18, 2023, the court summarily denied the petition, concluding Torres was ineligible for relief as a matter of law because "the record of conviction establishes the jury found that [Torres] acted as a direct aider and abettor of first degree murder with the intent to kill," which is still a viable theory of murder.

Torres filed a timely notice of appeal.

## DISCUSSION

## A.    Standard of Review

In reviewing the summary denial of a section 1172.6 petition, " '[w]e independently review a trial court's determination on whether a petitioner has made a prima facie showing.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1174.) Because we conduct an independent review, "we may affirm a ruling that is correct in law on any ground. [Citation.]" (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204, fn. omitted.)

## B.    Torres's Petition Fails as a Matter of Law Because the Jury Necessarily Found He Acted with Malice

"[A] court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.) Given the information, the jury instructions, and the verdict—all of which are part of the record of conviction—the jury

10

could have convicted Torres under one of only two theories: he was the actual killer, or he directly aided and abetted the commission of the murder.  If the jury found Torres guilty as the actual killer, he would not be entitled to relief under section 1172.6.  (§ 189, subd. (e)(1); see *People v. Strong* (2022) 13 Cal.5th 698, 710 [§ 1172.6 resentencing "relief is unavailable if the defendant was . . . the actual killer"].)  However, it would appear the jury concluded that Torres was *not* the actual shooter, as it found the personal firearm use allegation to be not true as to Torres.

That leaves the theory that Torres directly aided and abetted Hadnot's murder.  As the jury was not instructed on natural and probable consequences, this theory of murder liability remains valid under current law.  (*People v. Curiel* (2023) 15 Cal.5th 433, 462; *People v. Gentile, supra,* 10 Cal.5th at p. 848.)  Under the aiding and abetting instructions, the jury could only find Torres guilty of first degree murder as an aider and abettor if it concluded that Torres acted "[w]ith knowledge of the unlawful purpose of the perpetrator," meaning that Torres knew the shooter intended to kill, and "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the [murder.]"  (CALJIC No. 3.01.)  Thus, Torres is ineligible for relief under section 1172.6.

## C.     There is No Possibility Torres Was Convicted Based on Imputed Malice Due to Allegedly Ambiguous Jury Instructions

Torres contends he adequately alleged a prima facie case for relief under section 1172.6 because ambiguity in the jury instructions may have led the jury to convict him without finding

that he personally harbored malice.  He identifies three alleged ambiguities, which we discuss in turn.

1. *Reference to the "Slayer" in the First Degree Murder Instruction*

Relying first on a purported ambiguity in the instruction on first degree deliberate and premeditated murder, Torres contends that "the jury was asked only to find that the direct perpetrator had the intent to kill."  He focuses on the following statement in the instruction:  "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill."  (Italics added.)  Torres argues the jury could have equated "slayer" with "perpetrator" and, as a result, concluded an accomplice could be guilty of murder based solely on the intent of the perpetrator.

We are not persuaded.  Torres focuses on one instruction in isolation and ignores that the aiding and abetting instruction required the jury, if it was to rely on that theory to convict Torres of first degree murder, to find that as an aider and abettor Torres knowingly and intentionally helped another kill.  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123.)  The jury could not have found Torres guilty of first degree murder on an aiding and abetting theory based solely on the slayer's state of mind; instead, it had to find Torres knew the full extent of the perpetrator's criminal purpose and gave aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.  (*Id*. at p. 1118.)  "[W]e presume a jury understands and follows the court's instructions" (*People v.*

12

*Cortes, supra*, 75 Cal.App.5th at p. 205), and reject Torres's invitation to speculate to the contrary.[4]

   2.   *Alleged Ambiguity in the Malice Instruction*

Torres next argues that the instruction on malice created ambiguity that may have led the jury to impute malice to him because that instruction "focused on the act itself, and not the intent of the aider and abettor." This argument is meritless for the same reasons just discussed. As noted, the aiding and abetting instruction directed the jury to assess the accomplice's intent, including that he acted to promote the murder with knowledge of the slayer's unlawful purpose, and we presume the jury followed that instruction along with all the other instructions.

   3.   *Reference to the Equal Guilt of Principals*

Torres lastly argues that the instruction defining "principals" to include both perpetrators and accomplices contributed to the ambiguity caused by other instructions because it stated, "Each principal, regardless of the intent or manner of participation is equally guilty." (CALJIC No. 3.00.) He also points to portions of the prosecutor's closing argument that echoed this "equally guilty" language. This instruction, a former version of CALJIC No. 3.00, "generally stated a correct

_____

   [4] Torres makes a similar argument based on language from an instruction on the special circumstance allegation which referred to the intent of "the perpetrator." But the jury was instructed to consider the special circumstance allegation as to Torres only *after* it had found him guilty of murder, which for the reasons discussed meant that the jury found he acted with the intent to kill.

13

rule of law," in that "[a]ll principals, including aiders and abettors, are 'equally guilty' in the sense that they are all criminally liable." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) However, past cases have observed that the instruction "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*Ibid.*; see also *People v. McCoy, supra*, 25 Cal.4th at p. 1122 [holding an accomplice to murder can, under some situations, be liable for a greater crime than the perpetrator].)[5]

Cases criticizing the "equally guilty" language because in theory an aider and abettor could be guilty of a greater or lesser crime than the perpetrator do not suggest that the jury in this case could have convicted Torres of murder based on a theory of imputed malice. The trial court instructed the jury it must decide separately whether each defendant was guilty. As to Torres, the only charge before the jury was murder under instructions requiring a finding that he intended to kill. Again, Torres ignores that the aiding and abetting instruction required the jury, in order to convict him of murder as an accomplice, to find that he personally knew the perpetrator's criminal purpose and gave aid or encouragement with the intent or purpose of facilitating the commission of the crime. (*People v. Johnson* (2016) 62 Cal.4th 600, 641 [where the jury was instructed that

---

[5] Since Torres's trial, this standard instruction "has been revised to address the circumstance that aiders and abettors are not always guilty of *the same crime* as the actual perpetrators. (See Use Note to CALJIC No. 3.00 (Spring 2010 rev.) . . . .)." (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 433.)

14

the defendant could be guilty of murder as an accomplice only upon proof "that [the] defendant knew [the perpetrator] intended to kill [the victim], that he intended to aid and abet [the perpetrator] in committing the killing, and that he did in fact aid him in that killing," any ambiguity created by the " 'equally guilty' " language in former CALCRIM No. 400 "would have [been] cleared up"].)

## D. Torres's Reliance on Implied Malice Cases is Inapt

Torres relies on *People v. Langi* (2022) 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 to argue the instructions permitted the jury to convict him as an aider and abettor without finding he acted with malice. Both cases are distinguishable because they involved section 1172.6 petitions arising from convictions for aiding and abetting implied malice crimes. (*People v. Maldonado*, at pp. 1262-1263 [first degree lying-in-wait murder]; *People v. Langi*, at pp. 981-983 [second degree implied malice murder].) Because the underlying crimes in *Langi* and *Maldonado* were premised on implied malice, the jury in each case was not required to find the perpetrator acted with the intent to kill. By finding only that the accomplice was aware of the perpetrator's "unlawful purpose" (under the aiding and abetting instruction) leading to an implied malice killing, the jury did not necessarily find the accomplice acted with express malice. (*People v. Maldonado*, at pp. 1266-1267; *People v. Langi*, at p. 982.) Here, the underlying conviction for first degree murder was not premised on implied malice, and the jury thus found Torres knew the perpetrator acted with a purpose to kill. Coupled with its finding Torres intended that the murder be

15

committed, the jury necessarily found Torres acted with express malice.[6]

### E. The Trial Court Did Not Engage in Improper Fact-finding

Lastly, Torres contends that the resentencing court engaged in improper fact-finding in denying his petition. We disagree. The court's written order cites *People v. Lewis, supra,* 11 Cal.5th 952, which articulates the scope of a court's review at the prima facie stage. In addition, the court's analysis focused exclusively on the jury instructions and the jury's verdict.

In any event, based on our independent review of the record of conviction, we conclude that Torres is ineligible for relief under section 1172.6 as a matter of law. *People v. Flint* (2022) 75 Cal.App.5th 607, upon which Torres relies, is inapposite as in that matter we determined, after independent review, that the record of conviction did not refute the defendant's claim of eligibility for relief. (*Id.* at p. 613.)

---

[6] *People v. Lee, supra,* 95 Cal.App.5th 1164, cited by Torres, is also distinguishable. In that case, this court held that the defendant had made a prima facie showing he was entitled to relief under section 1172.6 where he had been convicted of murder under the provocative act doctrine at a time when "case law imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice, and did so in furtherance of the common criminal design," and the jury instructions reflected that theory. (*Id.* at pp. 1170-1171, 1182.) Here, in contrast, Torres was not prosecuted on any legally recognized theory of imputed malice, and under the instructions the jury was required to find he acted with actual malice.

16

## DISPOSITION

The order denying Torres's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.


17